AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court
## For The District of Columbia

UNITED STATES OF AMERICA

V.

CARLOS MAURICIO URQUIDI

**CRIMINAL COMPLAINT**

CASE NUMBER:

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about __1-1-01 through on or about 5-06-06__ in ___Washington, D C___ county, in the _____ District of _Columbia_ defendant(s) did, (Track Statutory ... of O... ...

being an agent of Pan American Development Foundation, an organization, said organization receiving in each of the one year periods beginning 1-1-01, 1-1-02, 1-1-03, 1-1-04, 1-1-05 and 1-1-06, benefits in excess of $10,000 under two United States Agency for International Development (USAID) cooperative agreements, embezzled, stole, obtained by fraud, intentionally misapplied and without authority knowingly converted to the use of a person not the rightful owner property worth at least $214,800, and owned by and under the care, custody and control of Pan American Development Foundation

in violation of Title 18 United States Code, Sections 666 and 2

I further state that I am Thaddeus Corley, Special Agent, USAID, Office of Inspector General, and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:  ☒ Yes    ☐ No

AUSA, Lionel Andre   (202) 514-9555
Sworn to before me and subscribed in my presence,

Signature of Complainant
Thaddeus Corley, Special Agent
USAID, OIG

_____    at    __Washington, D C__
Date                                         City and State

_____          _____
Name & Title of Judicial Officer           Signature of Judicial Officer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT*
*AGAINST CARLOS MAURICIO URQUIDI*

THADDEUS CORLEY, after being duly sworn, depose and state as follows:

INTRODUCTION

1. I am a Special Agent employed by the U.S. Agency for International Development (USAID), Office of Inspector General (OIG), San Salvador, El Salvador. I have been employed as a Federal Agent for more than15 years. During this period of time, I have investigated numerous allegations relating to federal narcotic violations and various government programs, including, but not limited to, procurement fraud, bribery, kickbacks, embezzlement, public corruption and theft of U.S. Government property. I have received numerous hours of Criminal Investigative Training and I have a Master or Arts Degree in Management and a Master of Business Administration Degree. In addition, I have been the affiant on numerous Search Warrants and Arrest Warrant affidavits.

2. The information contained in this affidavit is based on personal knowledge and observations made by me during the course of this investigation, information conveyed to me by others, including other law enforcement officials and other individuals responsible for an internal audit which was conducted at the request of Pan American Development Foundation (PADF), and my review of documents and computer data, including, but not limited to e-mail messages, accounting ledgers, memoranda, bank statements, cancelled checks, check registers, employee records and contracts.

3. Because this affidavit is submitted for the limited purpose of setting forth facts in support of this criminal complaint, this affidavit does not contain each and every fact learned or observed by me or others during the course of the investigation.

4. This affidavit is submitted in support of a criminal complaint for Carlos Mauricio Urquidi (URQUIDI). Based on the facts set forth, there is probable cause to believe that, among other laws, URQUIDI violated Title 18, United States Code, Section 666, in that URQUIDI as an agent of PADF, an organization receiving benefits in excess of $10,000 per year in Federal funds stole, obtained by fraud and intentionally misapplied PADF property worth at least $5,000 by: 1) causing fraudulent unauthorized cash advances in the amount of $17,578 to be withdrawn from PADF's bank account for his personal use, (2) fraudulently obtaining unauthorized reimbursements in the amount of $60,802 for personal furnishings that exceeded allowable limits, and (3) fraudulently obtaining

$136,423 for the purchase of a personal home and related expenditures that exceeded established allowable limits. As a result of his fraudulent conduct, PADF sustained losses in excess of $214,800.

## PADF

5. PADF is a United States Agency for International Development (USAID) contractor operating in the United States and Colombia. PADF's headquarters is in Washington, D.C., and it has an office in Bogota, Colombia. Carlos Mauricio Urquidi, was the Financial Director of PADF in Columbia from January 3, 2001 through May 6, 2006, when he resigned.

6. Since 2000, USAID has given PADF more than $20,000,000 via two Cooperative Agreements (CA), CA #527-A-00-00-00169-00, Reintegration of Families Displaced by the Violence and CA #514-A-00-05-00304-00, Integrated Humanitarian Assistance Support to Internally Displaced and Other Vulnerable Groups. Each calendar year, USAID has given PADF more than 10,000 per year. The money that USAID provided to PADF is to be used to provide support, training and housing for Colombians who are displaced by violence.

7. Urquidi was PADF Colombia's Financial Director from January 2001 until May 2006. As PADF's Financial Director, he had complete control over all of PADF Colombia's financial and administrative matters, to include, but not limited to, approving journal entries, preparing and mailing/submitting monthly financial statements, submitting disbursement request, signing checks, requesting fund transfers, and reconciling PADF's check registry and bank statements.

8. The money that PADF received from USAID was wire transferred from USAID in Washington, DC to PADF's bank in Washington, DC (Citibank NA). In order to receive USAID funds, each month, Urquidi requested via e-mail money from PADF DC. Based on the Urquidi's e-mails, PADF DC electronically transferred funds from PADF DC's bank account to PADF Colombia's bank account, in Bogota, Colombia. In order to show that the funds that PADF Colombia received were used to pay for PADF Colombia's operating expenses, Urquidi was required to prepare and to mail to PADF DC, via DHL, a monthly financial statement that accurately stated how PADF Colombia spent the funds. PADF DC then used the information that was contained in the monthly financial statements to justify wire-transferring additional funds to PADF Colombia, in order to replace the funds that they spent on operating expenses. Urquidi, by falsifying the information that was contained in the financial statements caused PADF DC to fraudulently use USAID funds.

### Urquidi's Fraudulent Scheme and Theft of PADF Funds for Personal Use

9. From June 2005 thru April 2006, Urquidi had 3,480 dollars deducted monthly from his salary at PADF DC and transferred to PADF Colombia's bank account. Once the funds

were in PADF Colombia's bank account Urquidi withdrew them. However, without authorization, Urquidi withdrew $17,578 more from PADF's bank account than he deposited. In order to withdraw the funds, Urquidi had the Director of PADF Columbia, unknowingly; sign a letter giving Urquidi authority to withdraw PADF funds. Urquidi was able to hide the fact that he withdrew more money than he deposited by falsifying the information that he put on PADF Colombia's financial statements. According to PADF officials, Urquidi was not entitled to receive the $17,578 dollars.

10. On December 31, 2001, Urquidi reclassified 40,111 dollars in personal expenses (92,255,360 pesos) from his personal accounts receivable account (payable to PADF Colombia) to PADF DC's furniture expenses accounts receivable (payable by PADF DC). By switching the 40,111 dollars from his personal accounts receivable account to PADF DC's accounts receivable account, Urquidi was able to hide the fact that he used 40,111 dollars of PADF's money, without authorization, to purchase personal items such as a golf club membership, school tuition for his children and various personal utility bills. On April 30, 2004, Urquidi approved, via journal entry number ARFP000054 the reclassification of $ 26,691 dollars (77,730,400.81 pesos) from his personal accounts receivable (payable to PADF) to PADF DC's furniture expenses accounts receivable (payable by PADF). As a result, of the reclassification, Urquidi received $26,691 dollars. Urquidi was able to hide the fact that he received the $40,111 dollars and the $26,691 dollars by falsifying the information that he put on PADF Colombia's financial statements. Urquidi subsequently mailed via DHL, PADF Colombia's falsified financial statements to PADF headquarters in Washington, D.C. As a result, of the falsified financial statements that Urquidi provided to PADF DC, PADF DC passed 60,802 dollars in fraudulent cost on to USAID. PADF officials have stated that Urquidi was not entitled to receive the $60,802 in purported furniture expenses that he received by falsifying the financial statements.

11. From June 2003, until April 2006, Urquidi used PADF funds, $131,422 (330,120,029 pesos), to purchase and pay for a condominium in Bogota, Colombia. According to PADF officials, Urquidi was not authorized to use PADF funds to purchase a condominium nor was he allowed to use PADF funds, $5,001 dollars (12,102,704 pesos), to pay for the monthly administrative cost associated with the condominium. According to PADF officials, Urquidi tricked PADF's Administrative Director into approving the payments for the condominium by telling him that the funds were being used to rent an apartment. Urquidi was able to hide the fact that he used PADF funds to purchase the condominium by falsifying PADF's Request for Reimbursement forms; giving PADF officials a fake apartment rental agreement and by falsifying the information that he put on PADF Colombia's financial statements. Each month Urquidi mailed via DHL, PADF Colombia's falsified financial statements to PADF DC. As a result, of the falsified financial statements that Urquidi provided to PADF DC, PADF DC passed $136,423 dollars in fraudulent housing cost on to USAID. On June 30, 2006, Urquidi sold the condominium and kept the profit from the sale of the condominium, which was approximately $100,000.

12. In summary, from on or about January 2001, thru July 2006, Carlos Mauricio Urquidi, former Financial Director, Pan American Development Foundation embezzled a total of 214,800 dollars by purchasing and paying for such items as a condominium, his personal loans, school tuition for his kids and furniture. In addition, Urquidi covered up the fact that he was embezzling funds from PADF by falsifying the information that he put on PADF Colombia's financial statements. Urquidi subsequently mailed to PADF DC via DHL, PADF Colombia's falsified financial statements which resulted in PADF DC passing 214,800 dollars in fraudulent cost on to USAID.

## CONCLUSION

13. Based on the foregoing facts, there is probable cause to believe that, among other laws, URQUIDI has violated Title 18, United States Code, Section 666, in that URQUIDI, as an agent of PADF, an organization receiving benefits in excess of $10,000 per year in Federal funds stole, obtained by fraud and intentionally misapplied property worth at least $5,000.

                                        Special Agent Thaddeus Corley
                                        U.S. Agency for International Development
                                        Office of Inspector General

SWORN AND SUBSCRIBED BEFORE ME THIS _____ DAY OF DECEMBER 2007.

_____
UNITED STATES MAGISTRATE JUDGE